El Pueblo de Puerto Rico, demandante y apelado, *v.* Pablo Lebrón Bernes, acusado y apelante.

No. 5052.—*Sometido:* Enero 11, 1934. *Resuelto:* Abril 27, 1934.

*Burset & Pérez Pimentel,* abogados del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Pablo Lebrón Bernes fué denunciado ante la Corte Municipal de Fajardo por Francisco Vélez Ortiz, Jefe de Distrito de la Policía Insular, por una infracción a la sección 29 de la Ley de Arbitrios No. 85 de 1925 (p. 585).

Condenado por la corte municipal, apeló a la del distrito, Humacao. En ésta se señaló el nuevo juicio para junio 9, 1932. Se llamó la causa y ambas partes anunciaron estar listas. Muestra el récord que antes de comenzar la práctica de la prueba ocurrió lo que sigue:

"Licdo. Burset: Señor Juez, en este caso vamos a presentar una excepción perentoria, a reserva de reproducirla más tarde por escrito. Nosotros entendemos que el delito por el cual se denuncia a este acusado, que es una infracción a la sección 29 de la Ley Número 85, de 1925, o sea de la Ley de Arbitrios, no constituye delito público en Puerto Rico. Sostenemos que la denuncia no imputa un delito pú-

blico en Puerto Rico, porque entendemos que la sección 29 de la Ley de Arbitrios No. 85, de 1925, no puede existir estando penado por una Ley Federal, o sea, la Ley de Prohibición Nacional, por poseer alambiques o aparatos destinados a la fabricación de licores. . . .

"(El Hon. Fiscal argumentó en oposición a la excepción perentoria presentada por el abogado defensor).

"Hon. Juez: La Corte resuelve la cuestión, indicando que su criterio es contrario a lo sostenido por la defensa, entendiendo que ésa no es la teoría correcta. . . .

"Licdo. Burset: Respetuosamente anotamos una excepción, y solicitamos ahora que se devuelva la propiedad ocupada, por entender que ha sido ilegalmente obtenida, porque la orden de allanamiento es defectuosa, por no describirse en ella de una manera clara y detallada como exige la ley, la propiedad que se va a registrar o sea el domicilio del acusado que no está claramente detallado en la orden de allanamiento. . . .

"Hon. Fiscal: . . . la moción, según nosotros entendemos, está fuera de lugar.

"Licdo. Burset: La única prueba es la propia orden de allanamiento.

"Hon. Juez: La Corte entiende también que la moción es tardía, que es necesario continuar perdiendo tiempo sobre esta cuestión. La Corte tiene el criterio formado de que debe declarar sin lugar la moción, porque es tardía, ya que está la evidencia en posesión de El Pueblo, aún cuando haya sido obtenida por una orden de allanamiento defectuosa, o en violación de cualquiera otra Ley, y el juicio está próximo a empezar. Si no se impugna el procedimiento por cualquier otro motivo, el expuesto por la defensa no es suficiente para ordenar la devolución de la evidencia ocupada.

"Licdo. Burset: Tomamos excepción. Y ahora alega el acusado que ha sido absuelto en la Corte Municipal de Fajardo el día 16 de febrero de 1932, por estos mismos hechos, habiendo sido denunciado por Infracción a la Ley Nacional de Prohibición.

"Hon. Fiscal: Evidencia.

"Licdo. Burset: Presentamos en evidencia una copia de la sentencia dictada por el Juez Municipial de Fajardo, certificada por el Secretario de aquella Corte, y una copia de la denuncia presentada por El Pueblo contra Pablo Lebrón Bernes, por infracción a la Ley Nacional de Prohibición. Y presentamos esta certificación para sostener que este acusado fué obsuelto por estos mismos hechos.

"Hon. Fiscal: Con nuestra oposición, señor Juez.

"Hon. Juez: A los efectos de la moción sobre absolución anterior la Corte admite la evidencia ofrecida y fundándose en ella se declara sin lugar la moción, por entender que son dos cuestiones distintas, la que aparece en la denuncia ante la Corte Municipal ,de Fajardo, y la denuncia que ahora está pendiente ante la Corte.

"Licdo. Burset: Respetuosamente anotamos una excepción.

"Hon. Juez: ¿Alegación?

"Licdo. Burset: El acusado es inocente."

Procedióse seguidamente a practicar la prueba con el siguiente resultado:

Francisco Vélez, Jefe Distrito P. I., denunciante, conoce al acusado y el 30 de octubre le ocupó en su casa el alambique que está ante la corte. Le preguntó si el alambique era suyo y si lo tenía inscrito en la Tesorería de Puerto Rico y le contestó que era suyo y que no lo tenía inscrito. El alambique ocupado es capaz ·de destilar alcohol. Explica cómo funciona.

La defensa aceptó que un policía insular que había comparecido como testigo de cargo declararía igual que su jefe.

El Fiscal introdujo entonces como prueba el alambique, compuesto de un recipiente, de un rectificador, de un tubo de goma y de una serpentina. Se opuso la defensa. La corte lo admitió y la defensa tomó excepción.

En ese estado el procedimiento la defensa presentó una moción de *nonsuit* que fué declarada sin lugar. No introdujo evidencia, y la corte dictó sentencia declarando al acusado culpable de un delito de infracción a la sección 29 de la Ley No. 85 de 1925, imponiéndole treinta y cinco días de cárcel con las costas.

No conforme el acusado, apeló. En su alegato señala la comisión de seis errores.

El primer señalamiento se refiere a la nulidad de la orden de allanamiento y el quinto a la admisión como prueba del alambique ocupado a virtud de dicha orden. Ambos guardan estrecha relación.

El fiscal llama la atención hacia el hecho de que la orden

de allanamiento no figura en los autos y así es en verdad. El apelante no ha colocado, pues, a esta corte en condiciones de resolver sobre la nulidad alegada.

Además la cuestión se suscitó en el acto del juicio después de ambas partes haber anunciado que se encontraban listas y era por consiguiente tardía. En el caso de El *Pueblo* v. *Cerecedo,* 21 D.P.R. 56, 61, esta corte se expresó así:

" 'Entiende esta defensa que la admisión, hecha por la corte, de los dos libros de cuentas y copiador, aún en el caso de que se hubiera probado que ellos pertenecían a Cerecedo, el acusado, fué error en perjuicio de los derechos esenciales del acusado.'

"Argumentando este error, el apelante sostiene que la Corte de Distrito violó principios consagrados por las Enmiendas IV y V a la Constitución de los Estados Unidos de América. Sin embargo, hay una circunstancia que impide que este error pueda ser siquiera alegado y discutido en este caso.

"Los libros se ocuparon por virtud de cierta orden de allanamiento librada por el Juez Municipal de San Juan, y el acusado nada objetó hasta el momento de celebrarse la vista. Tal momento no era el oportuno y la Corte de Distrito al admitir los documentos que según hemos visto se referían al delito investigado, no violó ningún principio constitucional, de acuerdo con la jurisprudencia que a continuación citamos.

" 'Admitiendo que los billetes de Lotería y los efectos fueron ocupados ilegalmente, esto no constituye sin embargo un motivo legal de oposición a su admisión como prueba. Si la orden de allanamiento fué ilegal, o si el funcionario que la cumplimentó se excedió en sus atribuciones, la persona a petición de la cual fué librada dicha orden, o el funcionario serían responsables del perjuicio causado. Pero ésta no es una buena razón para que sean excluídos como prueba los documentos ocupados si ellos eran pertinentes al caso, como indiscutiblemente lo fueron. En la presentación de documentos como prueba la corte no puede tomar en consideración la forma en que se obtuvieron, o sea, si fueron adquiridos legal o ilegalmente, ni constituyen ellos una alegación de carácter independiente del punto en discusión en la que pueda fundarse la resolución de dicha cuestión.' Com. v. Dana, 2 Mete., 329. Wigmore sobre Evidencia, art. 2183. 35 Cyc. Searches and Seizures, 1271, 1272.

" 'El mismo principio se había establecido en el caso de People v. Adams, 176 N. Y. 351, contra cuya sentencia se interpuso apelación

para ante esta corte, y en el que se resolvió que si los documentos ocupados además de los billetes de una especie de lotería eran prueba pertinente del caso, como así lo consideró la corte, eran admisibles como prueba en el juicio expresándose la Corte en la página 358, como sigue: ''El principio fundamental es claramente que cuando la corte está celebrando un juicio criminal, no tomará en consideración la forma en que los testigos han obtenido los documentos u otros objetos de uso personal, que son esenciales y que han sido debidamente ofrecidos como prueba.'' Esta doctrina de tal modo establecida por la Corte de Apelaciones de New York y que ha sido aprobada por este Tribunal y según la cual en la vista de una causa criminal la corte no permitirá que se promueva una cuestión indirecta respecto al origen de pruebas que son pertinentes, ha sido sancionada por tantas decisiones de los Estados que sería imposible citar o hacer referencia a ellas en particular. Muchas de las mismas han sido citadas en la nota del caso State v. Turner, 136 Am. St. Rep., 129, 135 *et seq.* Después de citar numerosos casos dice el editor: ''El principio en que se fundan todas estas resoluciones es claramente que cuando la corte se encuentra ocupada en la celebración de una causa criminal, no tendrá en consideración. la forma o manera en que ha adquirido un testigo ciertos documentos u otros efectos objeto de prueba que son esenciales y que han sido debidamente presentados como prueba. People v. Adams, 176 N. Y., 351, 98 Am. St. Rep., 675; 68 N. E. 636; 63 L.R.A. 406. Este examen o investigación no forma parte necesariamente de la acción principal y ponerlo en práctica sería demorar el curso ordenado de una causa y considerar incidentalmente una cuestion que ha venido a interponerse en el curso de dicha causa y que es enteramente independiente de la misma.' Weeks v. United States, 232 U. S. 383.''

■ Por el segundo señalamiento se levanta la cuestión suscitada por la excepción previa. Se argumenta por el propio apelante como sigue:

''En el presente caso se trata de una denuncia por una infracción a la sec. 29 de la Ley No. 85 del 1925 conocida por la Ley de Arbitrios, en la que se hace penable el poseer un alambique sin tenerlo inscrito en la oficina del Tesorero de Puerto Rico. Esta sección es igual a la sec. 61 de la misma Ley de Arbitrios de 1919.

''El acusado presentó una excepción perentoria alegando que los hechos consignados en la denuncia no constituyen un delito público, porque entendía que esta sección está derogada o mejor dicho no

puede subsistir estando penado estos hechos por la ley federal de prohibición. Con la excepción del apelante fué declarada sin lugar la excepción perentoria.

"¿Tiene facultad nuestra Legislatura para promulgar leyes que estén en oposición a leyes federales o que tácitamente la deroguen? Esta pregunta queda contestada indudablemente en la negativa. El poder y la facultad de nuestra Legislatura insular está limitada por el poder y la facultad del Congreso de los Estados Unidos.

"Antes de ser promulgada la ley conocida por Ley de Prohibición Nacional, existía en los Estados Unidos y existe en la actualidad otra ley conocida por Ley de Rentas Internas, y en su sección VI, o sea Estatutos Revisados de los Estados Unidos, sec. 3258 disponía que toda persona que estuviere en posesión de un alambique para fabricar licor estaba en la obligación de inscribirlo en la oficina del colector de rentas internas y el no hacerlo así era constitutivo de un delito. Como se ve esta sec. 3258 de los Estatutos Revisados de los Estados Unidos es análoga a la nuestra contenida en nuestra Ley de Arbitrios, la única diferencia es que en aquélla la obligación es de inscribir el alambique con el colector de rentas internas y en ésta es de inscribirlo en la oficina del Tesorero de Puerto Rico.

"Y así se verá que todas aquellas leyes de rentas internas federales que estaban relacionadas con licores intoxicantes fueron derogadas por la Ley de Prohibición y no creemos que nuestra Legislatura insular haya de tener facultades más amplias que el propio Congreso americano para poder legislar sobre estas materias. Para sostener nuestro punto de vista, vamos a copiarle alguna de las decisiones de los tribunales americanos resolviendo sobre esta contención.

" 'Rev. St. sec. 3258, 3281 (Comp. St. 5994, 6021), making it an offense to have an unregistered still or to carry on the business of distiller without giving bond or with the intent to defraud the United States of the tax, so far as relates to stills for the manufacture of liquor for beverage purposes, held repealed by the National Prohibition Act of October 28, 1919. Gray vs. U. S., 276 F. 395.''

Si la ley insular no se refiriera como se refiere expresamente a alambiques capaces de "destilar alcohol para fines medicinales, industriales, científicos o sacramentales," tendría razón el apelante.

El propio caso de *Gray* vs. *U. S.,* 276 F. 395 que el apelante invoca limita expresamente la derogación "a alam-

biques para la manufactura de licor con fines de bebida.''
E igual limitación contienen los otros casos que cita.

Y se comprende perfectamente que así sea porque lo que
tendió a prohibir la ley federal fué la bebida de licores em-
briagantes, quedando autorizado el uso del alcohol, base de
dichos licores, para fines industriales, científicos, medicinales
o sacramentales, siendo en tal virtud legal su fabricación para
esos propósitos siempre desde luego que se cumpliera con
lo exigido por la ley sobre el particular.

■ El tercer señalamiento se formula así:

''La Corte de Distrito de Humacao cometió error al desestimar
la alegación del acusado de haber sido absuelto anteriormente por los
mismos hechos.''

Carece de fundamento. La absolución anterior que se
invoca lo fué de un delito de infracción a la Ley Nacional de
Prohibición consistente en la posesión de un galón de ron,
bebida embriagante, hecho distinto del imputado en este caso.

■ El cuarto señalamiento es como sigue:

''La Corte de Distrito de Humacao cometió error al permitir al
testigo Francisco Vélez Ortiz declarar como perito.''

No existe. Creemos que dada la competencia que reve-
laron sus contestaciones, el testigo estaba capacitado para
declarar sobre lo que era un alambique y sobre cómo funcio-
naba.

■ Por el sexto y último señalamiento se sostiene que la
corte erró al declarar sin lugar la moción de *nonsuit*.

Argumentándolo dice en su alegato el apelante:

''En el presente caso, claramente se verá examinando en su tota-
lidad toda la evidencia aportada por la prueba de El Pueblo, que no
establece en ninguna parte ni en forma alguna dos de los extremos
más importantes en casos de esta naturalza, a saber: que el alambi-
que sea capaz de destilar alcohol para fines medicinales, sacramentales
o científicos; ni que dicho alambique no estuviera inscrito en la oficina
del Tesorero de Puerto Rico.''

A nuestro juicio la prueba demuestra ambos extremos.

Basta recordar lo que declaró el testigo Vélez, a saber: que el alambique ocupado en la casa del acusado pertenecía a éste que no lo tenía inscrito en la Tesorería y era capaz de destilar alcohol que como tal es susceptible de usarse para fines industriales, científicos y medicinales.

*Debe confirmarse la sentencia recurrida.*